IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LEADING TECHNOLOGY COMPOSITES, INC.,** | *<br>*<br>* |
| v. | *      Civil Action No. CCB-19-1256<br>*<br>* |
| **MV2, LLC.** | *<br>* |

## MEMORANDUM

Leading Technology Composites ("LTC") and MV2 are two companies that make and sell protective equipment. LTC sued MV2 alleging patent infringement, and MV2 countersued, requesting declaratory relief and alleging tortious interference with prospective advantage. LTC filed a motion to dismiss the tortious interference claim (ECF 18). It has been fully briefed. For the reasons set forth below, it will be granted.

## FACTS

LTC is a Kansas company that sells products that protect personnel and vehicles. Compl. ¶¶ 2, 3. It holds a patent (the "'598 patent") for an improved armoring panel. *Id.* ¶ 9. MV2 is a Maryland company that provides armor systems for personnel and vehicles. *Id.* ¶¶ 12, 15. On April 29, 2019, LTC filed a complaint against MV2 alleging infringement of its '598 patent. *Id.* ¶¶ 18, 19. On May 23, 2019, MV2 filed a counterclaim against LTC, requesting declaratory judgment relating to the validity and infringement of the patent, and alleging tortious interference with prospective advantage. *See* Counterclaim, ECF 16.

In regard to the tortious interference claim, MV2 alleges the following: On or about October 2017, LTC suggested that MV2 purchase armor panels from LTC in order to fulfill a government contract, but MV2 declined. *Id.* ¶ 55, 57. LTC then communicated its intention to interfere with or obstruct MV2's business, and, as part of that, filed the complaint in this case.

1

*Id.* ¶ 58. The complaint, however, is baseless because LTC knows or should know that the '598 patent is invalid and MV2 is not infringing the patent. The patent is invalid because, in its application for the patent, LTC failed to disclose prior art and the sale of non-LTC products that were material to the patentability of the claims. *Id.* ¶¶ 14–20. Additionally, LTC filed this complaint after being advised by Mr. Bockbrader, an inventor of the patent and now a consultant for MV2, that the MV2 products used the "C"-shaped edge protector, *id.* ¶ 27; LTC also actually or constructively knew that armor panels with a "C"-shaped or "U"-shaped edge protector channel were already being sold prior to its application for the patent.[1] *Id.* ¶¶ 22–24. Further, prior to filing the complaint, LTC did not inspect the interior cross-section of any allegedly infringing MV2 product. *Id.* ¶ 25.

According to MV2, in addition to filing the complaint, LTC interfered with MV2's business in two other ways. First, they sent a letter to ITEN, a company that provides certain armor panel materials to MV2, through counsel, advising them of the lawsuit and requesting they retain certain documents. *Id.* ¶¶ 63–67. MV2 alleges that this litigation hold was overly broad, unduly burdensome, and vexatious; that LTC has previously allowed ITEN to supply the armor materials to other companies without objection and without a license under the '598 patent; and that LTC sent the letter to ITEN with no intent to file suit against ITEN, no intent to request discovery from ITEN, and with the primary purpose to interfere with the business relationship between MV2 and ITEN. *Id.* ¶¶ 70–74. Second, LTC communicated with Mr. Bockbrader, an inventor of the patent and consultant to MV2, through counsel, inquiring about the relationship between Mr. Bockbrader and MV2. *Id.* ¶¶ 77–81. MV2 alleges LTC's actions have caused it to limit essential communications with suppliers, business partners and consultants; required it to

---

[1] The implication, though not explicitly stated, is that the "C"-shaped edge protector is not covered under the '598 patent.

2

disclose the lawsuit to current and prospective business partners and prospective financiers; disrupted its ability to fulfill existing and prospective government contracts; damaged its reputation; and compromised its relationships with ITEN, with whom it had an existing open-ended "verbal" contract, and Mr. Bockbrader. *Id.* ¶¶ 76, 83–97.

On June 13, 2019, LTC filed this motion to dismiss, arguing that the underlying conduct is protected by the absolute litigation privilege and/or the *Noerr-Pennington* doctrine, and, alternatively, that MV2 fails to state a claim for tortious interference.[2]

## STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

---

[2] Both parties agree that Maryland law applies to this tort claim.

3

## ANALYSIS

Absolute Litigation Privilege:

Maryland has long recognized an absolute litigation privilege in defamation suits, immunizing judges, witnesses, parties, and counsel from liability for "defamatory statements uttered in the course of a trial or contained in pleadings, affidavits, depositions, and other documents directly related to the case." *Di Blasio v. Kolodner*, 233 Md. 512, 522 (1964). The privilege applies not just to statements made in judicial proceedings, but also to certain out-of-court statements that are "connected to some pending or ongoing proceeding." *Norman v. Borison*, 418 Md. 630, 650, 656 (2011). An out-of-court statement made by witnesses, parties, or judges is privileged if it satisfies two prongs: 1) the proceeding with which it is connected has an important public function and adequate procedural safeguards, and 2) the context of the statement indicates it "was made during the course of the proceeding." *Id.* at 652, 657–58. The second prong requires considering the purpose of the statement, the individual's actions when making the statement, and to whom the statement was made. *Id.* at 658.

Beginning in 2013 in *Mixter v. Farmer*, Maryland courts began suggesting or assuming, without so holding, that the privilege applies not just to defamation claims but to other torts. *Mixter v. Farmer* involved a dispute between two lawyers, wherein one (Farmer) sent letters "to various Maryland attorneys discussing [Mixter's] 'unprofessional behavior'" and "seeking information about other lawyers' negative experiences with Mixter for a potential complaint with the Attorney Grievance Commission of Maryland." 215 Md. App. 536, 541–42 (2013). Farmer also sent a letter to one of Mixter's clients. *Id.* at 542. Mixter sued Farmer for various torts, including tortious interference with prospective advantage. *Id.*

4

The court first addressed the absolute litigation privilege in the context of defamation, noting that "even a meritless complaint is privileged and the complainant's motive is immaterial." *Id.* at 545. The *Mixter* court then addressed whether the privilege also applied to the other allegations, including the alleged tortious interference with prospective advantage. The court found that precedent and policy considerations suggested that the privilege should be extended to other torts when they "arise from the same conduct as the defamation claim." *Id.* at 546–47. The court, however, based its holding on two separate rationales: either that the letters were covered by absolute privilege, or that the defendant was entitled to summary judgment regardless. *Id.* at 549–50.

Subsequently, in *O'Brien & Gere Engineers, Inc. v. Salisbury*, a case applying the litigation privilege to contract claims, the court observed that the litigation privilege "is not confined in the law of torts to matters of defamation." 447 Md. 394, 410 (2016) (internal citation omitted). *See Attny Grievance Comm'n of Md. v. Frost*, 437 Md. 245, 268 n.14 (2014) (The absolute litigation privilege "is a broad defense to tort claims[.]"); *see also State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 570 (D. Md. 2019) ("Maryland courts have only recently concluded that the absolute litigation privilege applies to claims of tortious interference with prospective business advantage."). The Maryland Court of Special Appeals, however, recently noted, quoting *Mixter*, that "Maryland law is not settled on the extent to which absolute privilege results in immunity outside of defamation cases." *Md. Bd. of Physicians v. Geier*, 241 Md. App. 429, 506 n.21 (2019).

Tortious interference with prospective advantage:

The elements of a claim for tortious interference with prospective advantage are:

(1) intentional and wilful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss,

5

without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting.

*Audio Visual Assocs., Inc. v. Sharp Elec. Corp.*, 210 F.3d 254, 261 (4th Cir. 2000) (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 652 (1994)). The third element requires that the acts be independently wrongful. Maryland courts have stated that "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith" are the "types of wrongful or unlawful acts that could form the basis for malicious interference with economic relations." *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 153 (2000) (internal citations omitted) (finding that a reasonable construction of a partnership agreement was not a "groundless" claim, *id.* at 154–55).

Application of the absolute litigation privilege to LTC's statements:

The statements by LTC that MV2 alleges interfered with its business meet the *Norman* test for absolute litigation privilege. First, this judicial proceeding with which the statements are connected serves the public interest as it helps to enforce federal patent protections. *See State Farm*, 381 F. Supp. 3d at 567 (a suit alleging fraud serves the "compelling government interest" of "the detection and prevention of fraud."). Second, the statements were made in or during the course of the proceeding. MV2 claims that three actions by LTC were tortious: filing the complaint, sending a litigation hold letter to ITEN, and communicating with Mr. Bockbrader regarding his relationship with MV2. The complaint is clearly part of the proceeding. The litigation hold and communication with Mr. Bockbrader are also within the course of the proceeding. The purpose of the litigation hold was to inform ITEN about the need to preserve relevant documents, and the purpose of communicating with Mr. Bockbrader was to gather

6

information relevant to LTC's patent infringement claim. The recipients of the communications, ITEN and Mr. Bockbrader, were both relevant to the proceedings. *See id.* at 567–68 (finding that claim denial letters sent by an insurance company to their clients regarding the denial of payments at issue in the pending civil lawsuit were made during the course of the proceeding).

MV2, however, is correct that any extension of the absolute litigation privilege to claims of tortious interference is seemingly at odds with the longstanding pronouncement by Maryland courts that "groundless civil suits" may form the basis of a tortious interference claim. Other states that apply the absolute litigation privilege to all torts note that the only exception is for malicious prosecution. *See e.g. Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (en banc). Maryland courts, however, have not yet addressed the contours of the litigation privilege's application to other tort claims, including how the privilege would affect a claim of tortious interference based on a groundless civil suit, as MV2 alleges here. Therefore, the court will address whether, assuming LTC's actions are not absolutely privileged, MV2 has made out a plausible claim for tortious interference with prospective advantage.[3]

Whether MV2 states a claim for tortious interference:

Regardless of whether LTC's actions are privileged, MV2 fails to state a claim for tortious interference. In regard to LTC's complaint, MV2 has not sufficiently alleged that it is "groundless." MV2's claims regarding the complaint can be grouped into two general allegations: that the '598 patent is invalid because of the failure to disclose material facts in the

---

[3] LTC also argues that the tortious-interference counterclaim is barred as a matter of law by the *Noerr-Pennington* doctrine. The Fourth Circuit, however, has expressed hesitancy in considering the affirmative defense of *Noerr-Pennington* at the motion to dismiss stage. *Waugh Chapel South, LLC v. United Food and Commercial Workers Union Local 27*, 728 F.3d 354, 359–60 (4th Cir. 2013). Further, because the court may resolve this motion on other grounds, it need not and will not address the *Noerr-Pennington* defense.

patent application process, and that LTC knows MV2 is not infringing on the patent but is suing anyway.[4]

Regarding the patent's alleged invalidity, simply showing that MV2 may have a defense to the patent claim is insufficient to suggest that LTC's suit is groundless or made in bad faith.[5] LTC's patent is presumed valid and its patent infringement claim is presumed to be in good faith. *See C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1369 (Fed. Cir. 1998) ("The law recognizes a presumption that the assertion of a duly granted patent is made in good faith."). Although MV2 alleges that LTC "had actual or constructive knowledge" of material information that they failed to disclose, the mere failure to disclose known material facts does not necessarily invalidate a patent. *See Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 828–29, 832 (Fed. Cir. 2010) (to show that the failure to disclose constitutes inequitable conduct making a patent unenforceable, the party asserting inequitable conduct must show the intent to deceive); *see also Matthews Int'l Corp. v. Biosafe Engineering, LLC*, 695 F.3d 1322, 1332 n.5 (Fed. Cir. 2012) ("Absent any evidence, however, that Biosafe itself engaged in

---

[4] MV2 also alleges that "[p]rior to filing the Complaint, LTC had communicated its intention to interfere with or obstruct MV2's business activities" and "LTC's Complaint is an extension of its expressed intention to interfere with or obstruct MV2's business activities." Counterclaim ¶¶ 58, 59. These allegations are "naked assertions devoid of further factual enhancement" which "will not suffice to meet the Rule 8 pleading standard." *ACA Fin. Guar. Corp. v. Buena Vista, Va.*, 917 F.3d 206, 211 (4th Cir. 2019).

[5] "Federal patent law . . . preempts state-law tort liability when a patentee in good faith communicates allegations of infringement of its patent." *Dominant Semiconductors Sdn. Bhd. v. OSRAm GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008). Therefore, in state law claims based on such communications, "bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim." *Id.* (internal quotations omitted). To show bad faith, the plaintiff must show that the allegations are "objectively baseless" (that "no reasonable litigant could reasonably expect success on the merits") as well as subjectively made in bad faith. *Id.* While neither party expressly discusses whether MV2's claim is subject to preemption unless it can show bad faith, both parties appear to assume at least that the bad faith test is relevant to whether MV2 can adequately state a claim of tortious interference. *See* LTC's Mot. to Dismiss at 10 (discussing the bad faith test analyzed in *Galbreath v. Burlington Coat Factory Warehouse of Arundel, Inc.*, 2003 WL 22955704 (D. Md. 2003)); MV2's Opp'n at 18 (arguing that LTC's actions fail the bad faith test); *see also* MV2's Opp'n at 6 (invoking the *Professional Real Estate Investors v. Columbia Pictures Industries'* "sham litigation" test, which contains the same "objective baselessness" standard as the bad faith test, *see Dominant Semiconductors*, 524 F.3d at 1261; *Professional*, 508 U.S. 49 (1993)). Regardless of whether MV2 must show bad faith (i.e. objective baselessness and subjective bad faith) to avoid preemption of its tortious interference claim, or whether MV2 must show bad faith in order to make out the elements of its tortious interference claim, both parties agree that the bad faith test is relevant to the motion to dismiss.

8

inequitable conduct – or had knowledge of such conduct on the part of [the applicants] – there is no showing of the bad faith required to support Matthews' state-law claims."). MV2 may have a defense that the patent is invalid, but this does not make LTC's complaint groundless. *See C.R. Bard*, 157 F.3d at 1369 (efforts to enforce a patent that is later determined to be invalid does not constitute sham litigation); *Tyco Healthcare Grp. LP v. Mut. Pharm. Co., Inc.*, 762 F.3d 1338, 1346 (Fed. Cir. 2014) ("We conclude that Mutual has not met its burden to establish that Tyco's validity arguments were objectively baseless, even though those arguments were ultimately unsuccessful.").

MV2 also alleges the suit is baseless or made subjectively in bad faith because LTC knows or should know that MV2 is not infringing on its patent. To support this, MV2 points to communications between LTC and Mr. Bockbrader, where Mr. Bockbrader informed LTC that MV2 products use the "C"-shaped edge covering. Even assuming that the use of the "C"-shaped edge covering would vitiate the patent infringement claim, MV2's allegation, if true, only shows that LTC disregarded the statement of Mr. Bockbrader in filing its complaint. This does not make the claim frivolous, as LTC was not required to accept Mr. Bockbrader's assertion as true. MV2 further alleges that LTC did not inspect the allegedly infringing MV2 products before filing suit. MV2 does not explain, however, why this is evidence of objective baselessness or subjective bad faith, especially when it is neither alleged that LTC was required to inspect nor that they had the opportunity to do so.[6]

Similarly, MV2 has not sufficiently alleged that LTC's letter to ITEN or communications with Mr. Bockbrader constituted tortious interference with MV2's prospective business relations.

---

[6] MV2 argues that LTC "has alleged infringement without any reasonable basis at least in that LTC has not demonstrated a plausible infringement contention regarding claimed interior features merely by pointing to a picture of the outer surface of the accused MV2 product specified in the Complaint." MV2's Opp'n at 17. The court notes, however, that this claim of baselessness is somewhat belied by the fact that MV2 did not file a motion to dismiss LTC's complaint and instead chose to proceed to discovery.

9

The letter to ITEN advised them of the lawsuit and requested they retain certain documents, and the correspondence with Mr. Bockbrader asked him questions regarding his work with MV2. MV2 has not sufficiently alleged that anything in those communications was incorrect or false and thus have not shown bad faith. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) ("In general, a threshold showing of incorrectness or falsity, or disregard for either, is required to find bad faith in the communication of information about the existence or pendency of patent rights. Indeed, a patentee, acting in good faith on its belief as to the nature and scope of its rights, is fully permitted to press those rights even though he may misconceive what those rights are." (internal quotation and citation omitted)). Therefore, MV2 has failed to sufficiently allege that LTC engaged in any unlawful and unjustifiable acts, and has not plausibly alleged a claim for tortious interference.

## CONCLUSION

For the reasons set forth above, the court will grant LTC's motion to dismiss MV2's claim for tortious interference. Count III of MV2's counterclaim will be dismissed without prejudice.

A separate order follows.

10/8/19
Date

/s/ CCB
Catherine C. Blake
United States District Judge