IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LEADING TECHNOLOGY COMPOSITES, INC., | * * * | |
| | * | Civil Action No. CCB-19-1256 |
| v. | * * | |
| MV2, LLC. | * | |

## MEMORANDUM

Leading Technology Composites, Inc. ("LTC") alleges that MV2, LLC ("MV2") infringed on LTC's patent, U.S. patent number 8,551,598 ("'598 patent"), by placing edge trims on MV2's armor panels. In response, MV2 filed a counterclaim alleging that the patent is invalid, and also asserts invalidity as a defense. MV2 argues that it has not infringed on the patent and, regardless, the patent is invalid.[1] At issue here is LTC's motion for summary judgment as to whether MV2 can challenge the validity of the patent based on the doctrine of assignor estoppel. The motion has been fully briefed and counsel were given the opportunity to make oral arguments regarding the motion at the February 7, 2020, claim construction hearing. For the reasons stated below, the motion will be granted.

## FACTS

The relevant facts concern the relationship between John Bockbrader, an inventor of the '598 patent, and MV2. John Bockbrader began working at LTC in 2011. (ECF 49-3, Bockbrader Deposition, at 14:8–11). While at LTC, Bockbrader co-invented the subject of the '598 patent, relating to an armoring panel for resisting edge impact penetrations by ballistic projectiles. (ECF No. 1-2, '598 patent). Bockbrader assigned his rights related to the patent to LTC. (ECF 49-15, Assignment). Bockbrader left LTC in 2015, and started working as a staff

---

[1] MV2 also filed a request for *ex parte* reexamination with the United States Patent and Trademark Office, and the office is currently conducting a reexamination of the patent. (ECF 55, MV2's Opp'n at 3–4).

1

member at Ohio State University. (Bockbrader Deposition, at 82:15–17). Bockbrader does consulting work, and sometimes bills his clients through Ohio State, and sometimes bills his clients directly. (*Id.* 133:22–134:4).

Grey Chapman and Keith Harrison formed MV2 in 2016. MV2 is a "designing consulting firm that does ballistic armor design and integration." (ECF 49-4, Keith Harrison Deposition, at 11:20–22). Chapman owns 51% of MV2 and Harrison owns 49%. (*Id.* at 14:5–6). There are no other employees of MV2, but MV2 works with contractors. These contractors include Harrison's wife, Carrie Harrison, who does office management work, billing, and invoicing, and Chapman's husband, Shane Bartus. (*Id.* at 12:7–13:16). Beginning in June 2016, Harrison and Chapman approached Bockbrader about doing work for MV2, (*id.* at 73:13–74:6), and Bockbrader agreed, (ECF 49-40). It appears, though, that Bockbrader did not do a significant amount of work for MV2 until after February 2017.[2]

Bockbrader does not have a leadership role or an ownership interest in MV2 (Chapman Decl. ¶¶ 6–8). MV2 considers Bockbrader to be a contractor for them. (Harrison Deposition, at 97:19). Bockbrader has an MV2 email address, although he does not use it. (Harrison Deposition, at 97:8–9; Chapman Decl. ¶ 9). He is one of five people with an MV2 email address: the others are Harrison, Chapman, Carrie Harrison, and Shane Bartus. (Harrison Deposition, at 97:15–16). Bockbrader also has an MV2 credit card. (Bockbrader Deposition, at 201:5).

In his work with MV2, Bockbrader is mostly involved with integration, which is the installation of the armor panels on the boats in a proper manner. (Harrison Deposition, at 110:1–13). On occasion, he interacts directly or meets with MV2's clients on behalf of MV2.

---

[2] *See* ECF 59-3, a February 18, 2017, email between Bockbrader and Harrison, where Bockbrader says "I am not worried about what I have contributed to date. Let's worry about this more when it takes more than a few minutes to answer questions," implying that he has not done much work for MV2 so far.

2

(Bockbrader Deposition 105:19–107:3). The testimony and exhibits show that Bockbrader also assisted with other aspects of the armor panels, including the edge trim. For example:

- <u>Harrison consulted with Bockbrader about the materials for the edge trim.</u> In a December 18, 2017, email, Harrison asked Bockbrader "what material would be best to use for this edge trim?" (ECF 49-27). Although any response by Bockbrader is not in evidence, Bockbrader testified in his deposition that "I am sure I did respond." (Bockbrader Deposition, at 155:16).

- <u>Harrison consulted with Bockbrader about the manufacturing of the edge trim.</u> Harrison has consulted with Bockbrader regarding a suggested modification to the edge trim (ECF 49-42), the length of the edge trim (Bockbrader Deposition at 156:22–157:6), and the weight of the edge trim (ECF 49-31). At one point, Harrison asked Bockbrader to "draw a piece of edge trim based on the" thickness of an MV2 panel, and he did so. (Bockbrader Deposition, at 152:8-13). More generally, in a November 2017 email, Harrison arranged for Bockbrader to meet with Iten, the manufacturer of the armor panels, so Bockbrader could understand Iten's capabilities. (ECF 49-18).

- <u>Harrison and Chapman consulted with Bockbrader about how to place the edge trim on the armor panels.</u> In a July 19, 2018, email, Harrison asked Bockbrader for advice on the best glue to attach an edge trim to an HB212 panel (which appears to be a type of armor panel). (ECF 49-30). Additionally, in a September 28, 2018, email, Bockbrader advised Bartus, Chapman, and Harrison as to the best way to put channels (edge trims)[3] on the armor panels. (ECF 49-33). In response, Shane Bartus

---

[3] "Channels" means "edge trim." (Deposition of Bockbrader at 174:15–17).

wrote to Bockbrader that they "are leaning heavily on your prior experience and I think we need to implement your plan." (*Id.*).

- <u>Bockbrader recommended that MV2 put edge trim on certain panels that did not have them.</u> In an April 3, 2019, email Bockbrader recommended to Harrison that he replace the bezels with edge trim on certain armor panels that MV2 would be providing to a company, Safe Boats. (ECF 49-34). Harrison then relayed this suggestion to SafeBoats in an April 9, 2019, email. (ECF 49-35).[4]

Bockbrader testified in his deposition that MV2 benefitted from his edge protection knowledge. (Bockbrader Deposition, at 175:7–9). He also testified that "edge protection" is neither a frequent nor infrequent topic of conversation in his communications with MV2 or MV2's clients. (*Id.* 139:20–140:1). According to Bockbrader, he needs to know about "the size and shape and thickness of the edge protection" to be able to integrate the armor, and has also discussed with MV2's clients that the armor includes edge protection. (*Id.* at 140:5–11). MV2, however, had committed to providing armor panels with edge trim to a potential client, Metal Shark, before engaging Bockbrader. (Chapman Decl. ¶ 5; Bockbrader Deposition, 147:5–8).[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is

---

[4] According to Bockbrader, he recommended the edge trim for mounting protection, and not ballistics penetration, so it served a different purpose than the purpose of LTC's patent. (Bockbrader Deposition at 181:7–10). This may be relevant to whether MV2 infringed on LTC's patent, but in order for the court to determine whether MV2 is estopped from arguing invalidity, the court need not decide whether MV2's activities are actually infringing.

[5] Chapman's declaration states that "Mr. Bockbrader was engaged by MV2 after MV2 had committed to providing armor panels with edge trim." (Chapman Decl. ¶ 5). It is not clear to what commitment Chapman is referring. Bockbrader testified in his deposition that, in MV2's proposal as a subcontractor for Metal Shark (Bockbrader Deposition, at 141:20–142:4), edge protection was included, and Bockbrader did not help prepare the proposal (Bockbrader Deposition, at 147:2–8). As discussed above, though, with regard to armor panels made for SafeBoats, there seems to be at least one occasion in which Bockbrader recommended placing edge trim on panels that did not include edge trim.

4

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

## DISCUSSION

"Assignor estoppel is an equitable remedy that prohibits an assignor of a patent, or one in privity with an assignor, from attacking the validity of that patent when he is sued for infringement by the assignee." *MAG Aerospace Indus., Inc. v. B/E Aerospace, Inc.*, 816 F.3d 1374, 1379–80 (Fed. Cir. 2016) (citing *Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1224 (Fed.Cir.1988)). The purpose of the doctrine is to prevent unfairness and injustice, as "an

assignor should not be permitted to sell something and later to assert that what was sold is worthless, all to the detriment of the assignee." *Diamond Sci. Co.*, 848 F.2d at 1224.[6]

"Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the equities." *MAG Aerospace Indus.*, 816 F.3d at 1380 (quoting *Shamrock Techs., Inc. v. Med. Sterilization, Inc.*, 903 F.2d 789, 793 (Fed.Cir.1990). "Privity may be established where there is a close relationship among the relevant parties, such as where 'the ultimate infringer availed itself of the inventor's knowledge and assistance to conduct infringement.'" *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 412 F.3d 1331, 1336–37 (Fed. Cir. 2005) (quoting *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 839 (Fed.Cir.1991)); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 69 F. Supp. 3d 1136, 1140 (D. Colo. 2014) (stating that whether the alleged infringer availed themselves of the "inventor's knowledge and assistance" is the "central question.").

There are also several factors, identified by the Federal Circuit in *Shamrock Technologies*, that courts may consider in determining whether privity exists: "(1) the assignor's leadership role at the new employer; (2) the assignor's ownership stake in the defendant company; (3) whether the defendant company changed course from manufacturing non-infringing goods to infringing activity after the inventor was hired; (4) the assignor's role in the infringing activities; (5) whether the inventor was hired to start the infringing operations; (6) whether the decision to manufacture the infringing product was made partly by the inventor; (7) whether the defendant company began manufacturing the accused product shortly after hiring the

---

[6] Assignor estoppel still may apply even when the inventor assigns the rights to his invention prior to the granting of the patents. *Diamond Sci. Co. v. Ambico, Inc.*, 848 F.2d 1220, 1226 (Fed. Cir. 1988). Further, that the assignee "may have later amended the claims in the application process (a very common occurrence in patent prosecutions), with or without [the inventor's] assistance, does not give [the] arguments against estoppel any greater force." *Id.* Rather, to the extent that MV2 contends that LTC broadened the scope of the ultimate patented invention "beyond what could be validly claimed in light of the prior art," this would go to the scope of the claims of the patent. *See id.*

6

assignor; and (8) whether the inventor was in charge of the infringing operation." *MAG Aerospace Indus., Inc.*, 816 F.3d at 1380 (recounting the factors from *Shamrock Technologies*, 903 F.2d at 794).

Here, it is undisputed that MV2 availed itself of Bockbrader's knowledge and assistance to conduct the allegedly infringing operations. Bockbrader provided assistance regarding the edge trim, which is the allegedly infringing design. Bockbrader, Harrison, and Chapman communicated regarding the design and manufacture of the edge trim, and Bockbrader gave advice, as discussed *supra*. Therefore, these instances show that, although the "degree to which" MV2 availed itself of Bockbrader's knowledge regarding edge trim is disputed, "it is undisputed that [MV2] availed itself of [Bockbrader's] knowledge and assistance to develop the accused" edge trim. *Brocade Comms. Sys., Inc. v. A10 Networks, Inc.*, No. 10-cv-03428-LHK, 2012 WL 2326064, at *5 (N.D. Cal. June 18, 2012).

Although MV2 argues that it had committed to providing armor panels with edge trim to Metal Sharks prior to engaging Bockbrader (Chapman Decl. ¶ 5; Bockbrader Deposition, at 147:5–8), this does not change the fact that Bockbrader provided knowledge and assistance in helping MV2 to design and manufacture the edge trim. *See BASF Corp. v. Aristo Inc.*, 872 F. Supp. 2d 758, 775 (N.D. Ind. 2012), *revised in part*, 2012 WL 2420999 (N.D. Ind. June 26, 2012) ("The fact that Rosynski didn't provide all the specifications for the MISO Coater and process doesn't mean that Aristo didn't seek him out for his expertise he gained from the '210 Patent.").[7]

---

[7] *HWB Inc. v. Braner, Inc.*, 869 F. Supp. 579, 582 (N.D. Ill. 1994), cited by MV2, seems to require that the "assignor/inventor play such a significant part in his new employer's infringing operations that his new employer could not have initiated the infringing operations without the assistance of the assignor/inventor." While the court agrees that the "assignor must play a clear and direct role in the company's infringing operations," *id.* at 582, to the extent MV2 argues otherwise, the court does not find that LTC must prove that MV2 required or relied on Bockbrader to initiate the allegedly infringing operations.

7

Further, apart from his involvement in the edge trim, Bockbrader helped MV2 produce the armor panels more generally. "Privity does not require that the assignor directly design the infringing features of the accused product." *Brocade*, 2012 WL 2326064, at *5. According to Bockbrader's responses to a series of questions from LTC, which MV2 attaches to its opposition, Bockbrader "developed the exterior shape of the armor panels, how they would be integrated into the boat," and "generated the necessary production drawings that allowed the armor to be fabricated." (ECF 55-6, Answers by John Bockbrader to Questions Posed in 2/4/2019 Letter). Harrison also testified similarly at his deposition, stating that Bockbrader assisted with installing the armor panels on the boats, and also provided "CAD experience" and "solid works modeling experience, in terms of depicting and the way that the panels should be put in to the" vessel. (Harrison Deposition, at 110:17–22). Emails also demonstrate Bockbrader's work in helping to design and manufacture the panels: for example, a July 14, 2018, email from Chapman stated that "John Bockbrader is a contractor for me and has done all the boat design. . . He is the expert in terms of hardware, edge trim and coating. He will be involved when we start making these parts." (ECF 59-2). And on November 20, 2017, Harrison introduced Bockbrader by email to Iten (the manufacturer of the armor panels), and arranged Bockbrader's visit to the facility to "learn a little about the capabilities we have to work with, and get an idea of the pressing capabilities Iten has." (ECF 49-18).

In terms of the *Shamrock Technologies* factors, it is true that Bockbrader is only a contractor and has no ownership stake in MV2. (Chapman Decl. ¶¶ 6, 7). Despite this, his role in MV2 is clearly significant. As discussed above, Bockbrader is one of only five people to have an MV2 email address (the others being the owners, Chapman and Harrison, and their spouses),

and he also has an MV2 credit card.[8] In various communications and presentations, Chapman and Harrison have referred to Bockbrader as a member of the team,[9] and as discussed above, Bockbrader has met with MV2's clients on behalf of MV2. Further, Chapman and Harrison have both asked Bockbrader to work full-time with them, although he has so far declined. (Harrison Deposition at 195:19–196:4).

It is undisputed that Bockbrader is a named inventor of the '598 patent, (ECF 1-2), and MV2 does not contest that Bockbrader himself would be estopped from asserting invalidity of the patent against LTC. Additionally, based on the above undisputed facts, the court finds privity between Bockbrader and MV2. Therefore, MV2 is estopped from challenging the validity of the '598 patent.

Accordingly, the court will dismiss Count I of MV2's counterclaim, which requests the court to declare the '598 patent invalid, and holds that MV2 may not otherwise challenge the validity of the patent. It is not clear the extent to which MV2 wishes to argue that the '598 patent is unenforceable. MV2 may not challenge enforceability based on alleged inequitable conduct before the patent office or based on allegations that contradict Bockbrader's statements in his declarations as inventor. *See Shamrock Techs.*, 903 F.2d at 794–95.

Finally, the court notes that its finding of assignor estoppel does not prevent MV2 from arguing that LTC "may have broadened the claims in the patent applications (after the assignment[]) beyond what could be validly claimed in light of the prior art" and MV2 may

---

[8] Although Bockbrader testified he does not use his MV2 email address, the fact that he has one is indicative of his role at MV2.

[9] In an October 6, 2017, email from Chapman to Metal Shark Boats, she stated that they are working to "get John Bockbrader on our team" and would like to have him included in any kickoff meetings "since he is the integration guru." (ECF 49-16). In pitch materials to clients, MV2 has represented Bockbrader to be part of MV2. (*See* ECF 49-23 and ECF 49-24 (armor test results); ECF 49-25 (powerpoint presentation for briefing to Tacom, stating that Bockbrader joined in October 2017)). In a December 14, 2017, email to Vigor, Harrison stated "I'd like to include Bockbrader in this discussion as well. I feel it best to have the whole team." (ECF 49-20).

"introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring" the accused panels "outside the scope of the claim" of the patent. *Diamond Scientific Co.*, 848 F.2d at 1226.

## CONCLUSION

For the reasons stated above, LTC's motion for partial summary judgment on the issue of assignor estoppel will be granted. A separate order follows.

2/18/20
Date

*CCB*
Catherine C. Blake
United States District Judge