IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **LEADING TECHNOLOGY COMPOSITES, INC.,** | * <br> * <br> *    **Civil Action No. CCB-19-1256** |
| **v.** | * <br> * |
| **MV2, LLC.** | * |

**MEMORANDUM**

This is a patent infringement action brought by LTC against MV2. LTC alleges that MV2 has infringed on its Patent No. 8,551,598 (the "'598 patent") by manufacturing and selling armored panels with edge trim. Now pending is MV2's renewed motion to stay proceedings in light of the patent office's reexamination of the '598 patent and First Office Action rejecting the '598 claims as unpatentable (ECF 113). Also pending are MV2's motion for summary judgment of noninfringement (ECF 193), LTC's motion for summary judgment of infringement (ECF 171), LTC's Motion to Exclude Technical Expert Maher (ECF 187), LTC's Motion to Exclude Damages Expert Kindler (ECF 188), and MV2's Motion to Exclude Opinion of Dr. Cardi (ECF 191). Oral argument on certain motions, including the motion to stay, was heard on October 23, 2020. (ECF 231). For the reasons stated below, the court will grant the motion to stay the case until the patent office issues its final office action, or for at least six months, and will deny the remaining pending motions without prejudice to renewal.

**FACTS AND PROCEDURAL HISTORY**

LTC filed a complaint against MV2 on April 29, 2019, alleging infringement of its '598 patent and inducement of infringement of the '598 patent. (ECF 1, Compl.). On June 13, 2019, MV2 filed an ex parte request for the U.S. Patent and Trademark Office ("PTO") to reexamine LTC's '598 patent, pursuant to 35 U.S.C. § 302, which provides that "[a]ny person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any

1

prior art" that would affect the patentability of the patent. The PTO ordered reexamination of the patent on July 9, 2019, and MV2 filed a motion to stay proceedings pending the reexamination (ECF 32). That motion was denied without prejudice because no First Office Action (when the PTO makes an initial determination as to the patentability of the claims) had yet been issued. (ECF 81).

On March 13, 2020, the PTO issued a First Office Action. The First Office Action rejected the claims as being anticipated by and/or unpatentable over prior patents. (ECF 113-3, First Office Action). After the First Office Action was issued, MV2 filed this renewed motion to stay. MV2 requests that, in light of the First Office Action rejecting the claims, the court stay this case pending conclusion of the reexamination in the PTO, or, in the alternative, for at least 6 months subject to a review at that time.

LTC filed its response to the First Office Action on July 1, 2020. (ECF 169-1, Response to First Office Action). LTC amended claims 1, and 4–7, and added 35 new claims. (*Id.* at 2–3, Table of Contents). The PTO notified LTC on July 17 that its response was defective, and LTC filed a corrected response on August 14, 2020. (ECF 232-1, Second Office Action, at 4). On October 29, 2020, the PTO issued an Office Action rejecting all LTC's claims. (ECF 232-1, Second Office Action). The next step is for LTC to submit a response within two months of the Office Action, after which the PTO will issue its final decision as to the patentability of the original and/or amended claims, which LTC may appeal. (*See id.* at 3, 15–16).

"A reexamination . . . may result in: 1) a confirmation of the claims in whole; 2) a confirmation of the claims in an amended form; or 3) cancellation of the claims." *Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 483 (D. Md. 2006). According to reexamination filing data provided by MV2, when a third party requests

reexamination of a patent (as was the case here), in 20 percent of requests all claims are confirmed, in 13 percent all claims are denied, and in 62 percent the claims are changed. (ECF 32-16, Reexamination Filing Data – September 30, 2018, at 2). *Cf. Akzenta Paneele*, 464 F. Supp. at 483 (noting similar reexamination statistics).

In regard to the status of this case, fact discovery and expert discovery have concluded, but no trial date has been set. On February 18, 2020, the court issued a memorandum and order construing the claim terms, (ECF 105, 106), and a memorandum and order granting LTC's motion for summary judgment that MV2 was estopped from challenging the validity of the '598 patent based on the doctrine of assignor estoppel, (ECF 103, 104). Since then, both parties have moved for partial summary judgment, (ECF 171, LTC's Motion for Summary Judgment of Infringement; ECF 175, MV2's Second Motion for Partial Summary Judgment of Immunity; ECF 193, MV2's Motion for Summary Judgment of Non-Infringement), and to exclude several of the other's experts, (ECF 187, LTC's Motion to Exclude Opinions of Technical Expert Maher; ECF 188, LTC's Motion to Exclude Damages Expert Kindler; ECF 191, MV2's Motion to Exclude Opinion of Dr. Cardi). On November 20, 2020, the court issued a memorandum and order granting MV2's motion for summary judgment that, under 28 U.S.C. § 1498, MV2 is immune from suit for armored panels manufactured for the United States government pursuant to two government contracts. (ECF 233, 234).

## DISCUSSION

District courts "have inherent power to manage their dockets and stay proceedings . . . including the authority to order a stay pending conclusion of a PTO reexamination." *Akzenta Paneele*, 464 F. Supp. 2d at 484 (quoting *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)). "The Court should consider the competing interests of the parties and in particular 'a

party must demonstrate a clear case of hardship *if* there is a danger that the stay will damage the other party.'" *Id.* (citation omitted) (emphasis added). "Specifically, Courts weigh three factors in determining whether to grant a stay pending patent reexamination by the PTO: 1) the stage of the proceedings; 2) whether a stay would unduly prejudice the nonmoving party; and 3) whether a stay would simplify issues and the trial of the case." *Id.*

  A. Stage of proceedings

"In assessing the stage of the proceedings, Courts focus on whether a trial date has been set and the degree to which discovery has been completed." *Akzenta Paneele*, 464 F. Supp. 2d at 484. "Generally, the time of the motion is the relevant time to measure the stage of litigation." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014).[1] But in *VirtualAgility*, the Federal Circuit held that it was not an error for the district court to wait to rule on the motion to stay until the Patent Trial and Appeal Board granted review under the Covered Business Method Patents ("CBM") program (another method for reexamination of certain patents), and to consider the stage of the case at the time the Board granted review as well as the stage of the litigation when the motion was filed. *Id.* at 1317 & n.6. Here, the court considers the stage of litigation when MV2 filed its first motion to stay (July 19, 2019), as well as when the First and Second Office Actions were issued (March 13, 2020, *see* ECF 113-3 at 1, and October 29, 2020, *see* ECF 232-1, respectively), and when MV2 filed its renewed motion to stay (March 17, 2020).

The first motion to stay was filed early in the proceedings, shortly after the court issued a scheduling order and discovery commenced. (ECF 32). By the time the First Office Action was

---

[1] *VirtualAgility* regarded review under the Covered Business Method Patents ("CBM") program, but cited to district court cases involving *inter partes* reexamination (*Norred v. Medtronic, Inc.*, No. 13–2061, 2014 WL 554685, at *2 (D. Kan. Feb. 12, 2014)) and *ex parte* reexamination (*Cynosure, Inc. v. Cooltouch Inc.*, No. 08–10026, 2009 WL 2462565, at *2 (D. Mass. Aug. 10, 2009)).

4

issued and the renewed motion for stay was filed in March 2020, however, the parties had made much progress. Fact discovery was well underway and the court had already held a claim construction hearing and issued a claim construction order. Still, it does not appear that MV2 delayed in filing a request for reexamination or a motion to stay, nor is it MV2's fault that the Patent Office took so long to issue a First Office Action. The state of litigation when the instant motion was filed thus largely supports MV2's request. Considering the stage of litigation when the Second Office Action issued militates somewhat against a stay. At that time, all discovery had concluded, and the parties had exchanged dispositive motions, though no trial date had been set. While it appears that it is somewhat rare to stay a case pending re-examination by the PTO at this late stage, it is not unprecedented. For example, in *Alps S., LLC v. Ohio Willow Wood Co.*, No. 8:09-CV-386-T-EAK, 2011 WL 899627, at *2 (M.D. Fla. Mar. 15, 2011), the court stayed the case after the summary judgment stage, in response to a final rejection by the Patent Office of all claims. Therefore, the court finds that this factor is neutral.

    B. Whether a stay would unduly prejudice the nonmoving party

MV2 argues that the stay will not unduly prejudice LTC because MV2 is not engaged in tactical maneuvering; a large portion of the allegedly infringing activities are immune under 28 U.S.C. § 1498 because the armor panels were used or manufactured for the United States; and that a delay due to a reexamination proceeding is not inherently prejudicial[2] and the proceeding will not be as long as LTC suggests. LTC argues that the reexamination proceeding is likely to

---

[2] "[D]elay is inherent in the reexamination process and does not constitute, by itself, undue prejudice." *Classen Immunotherapies, Inc. v. Biogen Idec*, No. CIV. WDQ-04-2607, 2013 WL 680379, at *2 (D. Md. Feb. 22, 2013) (citing *Cellectis S.A. v. Precision Biosciences, Inc.*, No. 5:08-CV-00119-H, 2010 WL 3430854, at *4 (E.D.N.C. Aug. 31, 2010)).

5

last years; LTC and MV2 are direct competitors and a delay will allow MV2 to continue to infringe on LTC's patent; and MV2 is trying to gain an unfair tactical advantage.[3]

    a. Tactical maneuvering

LTC argues that MV2 improperly delayed filing its request for reexamination on June 13, 2019, because it was first informed of LTC's infringement accusations on December 12, 2018, and LTC filed its complaint in April 2019. The cases that LTC cites, however, involved additional behavior indicating tactical maneuvering in addition to the delay of several months. In *Esco Corp. v. Berkeley Forge & Tool, Inc.*, in addition to the delay in requesting reexamination, the record indicated that the defendant only requested reexamination after failed licensing negotiations, and had also failed to comply with discovery obligations. No. C 09-1635 SBA, 2009 WL 3078463, at *4 (N.D. Cal. Sept. 28, 2009).[4] And in *Affinity Labs of Texas, LLC v. BMW N. Am., LLC*, the defendants had requested and been granted several extensions of time to answer, and had requested and been denied another stay of six weeks before only one defendant requested *ex parte* reexamination, suggesting that the one had sought the " 'no risk for me' *ex parte* . . . process, allowing all Defendant[s] to lay behind the log, hoping for favorable developments with the passage of time." No. 9:08-CV-164, 2009 WL 8590914, at *2 (E.D. Tex. Feb. 20, 2009). Here, there is no evidence of any other delay tactics, and waiting six months after being informed of infringement accusations, and less than two months after LTC filed suit, does not strike the court as being strong evidence of delay tactics.

---

[3] LTC also argues that MV2 cannot demonstrate hardship and that its failure to do so is dispositive. The court disagrees. The competing interests of the parties are relevant, but courts have required the moving party to demonstrate "a clear case of hardship" only where "there is a danger that the stay will damage the other party." *Akzenta Paneele*, 464 F. Supp. 2d at 484. As will be explained, the court is not persuaded that a stay poses undue prejudice to LTC and thus MV2's case of hardship is somewhat less important.
[4] Unpublished opinions are cited for the soundness of their reasoning, not any precedential value.

LTC also argues that MV2's choice to request an *ex parte* examination rather than an *inter partes* examination is an unfair tactical advantage. This is because *ex parte*, unlike *inter partes* review, does not bind the third-party requester and does not prevent the requester from asserting the same patentability arguments in litigation. *See Affinity Labs of Texas, LLC*, 2009 WL 8590914, at *2; *see also Pro-Troll, Inc. v. Shortbus Flashers, LLC*, No. 16-CV-04062-VC, 2016 WL 11432003, at *1 (N.D. Cal. Dec. 23, 2016) ("The choice of ex parte reexamination was strategically advantageous to Shortbus Flashers because the result of the reexamination will have no estoppel effect on Shortbus Flashers's arguments here."). But in another case, the court stated that it would not find that seeking *ex parte* rather than *inter partes* review is itself evidence of an improper motive. *Edge-Works Mfg. Co. v. HSG, LLC*, No. 7:17-CV-223-FL, 2018 WL 10604745, at *2 (E.D.N.C. Apr. 30, 2018) (the "plaintiff offers no evidence that defendant sought ex parte reexamination for an improper purpose, and the court declines to so find absent any evidence in support"). Upon review of the cases, the court considers that *ex parte* reexamination places much of the burden on LTC in defending its patent while not exposing MV2 to any estoppel, but will not infer that MV2 chose *ex parte* reexamination based on an improper motive without any evidence to support such a finding.[5]

    b. Expected duration of reexamination process

Reexamination by the patent office takes, on average, 27.7 months, with a median time of 19.8 months. (ECF 32-16, Reexamination Filing Data – September 30, 2018, at 1). It is not clear how long reexamination takes from the time a First Office Action is issued. It appears in this proceeding that the First Office Action took an unexpectedly long time to issue, but the Second

---

[5] It is also not clear how the lack of estoppel in the *ex parte* proceeding would benefit MV2, because MV2 is estopped from arguing invalidity . (ECF 103, 104). And at oral argument, MV2 explained its decision to pursue an *ex parte* reexamination as an economic one—initiating *inter partes* reexamination is far more costly than initiating *ex parte* reexamination.

Office Action issued only two and a half months after LTC submitted its corrected response to the First Office Action. Assuming this case will follow the length of an average reexamination proceeding, and given that the request was filed on June 13, 2019, a decision could be expected in September or October of 2021. Using the median time, a decision could be expected in January 2021. As MV2 notes, PTO guidance indicates that cases in litigation are given priority, *2261 Special Status for Action [R-07.2015]*, available at https://www.uspto.gov/web/offices/pac/mpep/s2261.html (last accessed Dec. 17, 2020), but the PTO statistics do not separately account for these cases. Because this is an *ex parte* action, only LTC can appeal the final decision of the PTO. Although appeal of the PTO's final decision would extend the reexamination process, this is entirely within LTC's control, and presumably would only occur after a final rejection of the claims.

    c.  Prejudice to LTC

"Courts generally assume that a stay will be prejudicial where, as here, the plaintiff and defendant in an infringement suit are direct competitors."[6] *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. JKB-09-2657, 2011 WL 836673, at *2 (D. Md. Mar. 3, 2011). If the stay will allow MV2 to continue manufacturing and selling the allegedly infringing armor panels for longer before a judgment can be reached, LTC may lose market share or customer relationships and suffer irreparable harm, which might not be fully restored by money damages. *See Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 975–76 (Fed. Cir. 1996). MV2, however, argues that there should be no such assumption here because MV2 and LTC only compete, with respect to the allegedly infringing armor panels, on government contracts, as to which MV2 is immune from liability under 28 U.S.C. § 1498. As explained in the court's memorandum regarding MV2's §

---

[6] LTC argues that it and MV2 are direct competitors, which MV2 does not contest.

8

1498 immunity, LTC cannot get a remedy in this action for any allegedly infringing panels produced pursuant to MV2's two government contracts.

LTC argues, however, that MV2 has sold the allegedly infringing panels to a private company, Freeport McMoran, and those sales are not covered under § 1498. It is not clear, however, to what degree LTC competes with MV2 in the private sector, including whether LTC has attempted to sell its panels to Freeport McMoran. While LTC and MV2 are direct competitors, the assumption of prejudice is mitigated because LTC cannot get a remedy from MV2 for harm related to the government contracts, and although LTC points to other commercial activities, it is not clear whether LTC and MV2 have competed on any bids or sales for non-government clients.

Finally, "[a] stay will not diminish the monetary damages to which [LTC] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages and delays any potential injunctive remedy. . . . Although this is not dispositive, [the court] note[s] that [LTC] did not move for a preliminary injunction against [MV2]." *VirtualAgility Inc.*, 759 F.3d at 1318–19. Although there are many reasons a party may not move for a preliminary injunction, it does contradict LTC's assertion that it needs injunctive relief as soon as possible.[7]

    d. Prejudice to MV2

While being required to defend a suit does not constitute hardship by itself, *ePlus, Inc. v. Lawson Software, Inc.*, No. CIV. 3:09CV620, 2010 WL 1279092, at *4 (E.D. Va. Mar. 31, 2010), the court notes that, according to the representations by MV2, LTC is almost 40 times bigger than MV2 and has more resources, and that MV2 has spent close to half of one year's entire gross revenue defending the suit. (ECF 145, Reply at 11). While far from dispositive, the

---

[7]As to potential risk of witness loss due to time, the court notes that fact discovery has been completed.

court notes that wasted litigation (e.g. if the claims are finally cancelled or amended, so that prior briefing or expert discovery is no longer useful) will likely be more prejudicial to MV2 than to LTC, as MV2 has fewer resources which it can expend on this litigation.

In sum and upon consideration of the arguments, the court finds that the undue prejudice factor is also neutral.

C. Whether a stay would simplify issues and the trial of the case

In an *ex parte* reexamination "when the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307. According to 35 U.S.C. § 252, a reissued patent can only be enforced against MV2's activities occurring before the patent was reissued to the extent that the new claims are "substantially identical" to the reissued claims. Therefore, "the reexamination statute restricts a patentee's ability to enforce the patent's original claims to those claims that survive reexamination in 'identical' form." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1339 (Fed. Cir. 2013). Accordingly, a stay will simplify issues and the trial of the case, if, as may happen, none of LTC's claims survive the reexamination process. even if LTC is allowed to add more claims in response to the Second Office Action, it is not clear how much this would complicate the case, as LTC's amended claims cannot be broader in scope than the original claims. 35 U.S.C. § 305.

LTC argues that it seeks to amend claim 1 so that it is the current claim 7—that is, the amendment turns the original claim 7 into an independent claim. Therefore, if MV2 violated claim 7, it also would have violated the proposed amended claim 1, so that even if amended, the

new claim could be enforced against MV2. This argument, of course, presumed that the PTO would change its mind about claim 7, which it initially rejected. The PTO has not changed its mind and has now rejected all of LTC's forty-two amended claims. (ECF 232-1). At this point, it appears doubtful that any claims will survive the reexamination process. As infringement of LTC's original claims is the only remaining disputed issue in the case, the court finds that it would be a waste of judicial resources to further litigate what is at best likely to be a moving target. The reexamination may well simplify the case by removing some or all of the claims; in any event, it will simplify the case by reaffirming or refining the patent at issue, and by ensuring that the court and the parties do not waste additional time litigating a claim that will be cancelled or amended. Therefore, this factor weighs in favor of a stay.

Upon consideration of all the factors, a stay is warranted. Particularly, waiting until the PTO has issued a final office action will likely simplify the issues and add certainty to the claims being litigated. Additionally, the court finds that the prejudice to LTC of a stay is questionable. The court is mindful that the parties have already expended significant time and resources on this case, including by briefing dispositive motions and finalizing expert discovery, but "[t]he fact that significant resources have been expended to date does not in and of itself justify continued expenditure of significant additional resources." *See Cellectis S.A.*, 2010 WL 3430854, at *3, 6–7 (granting a stay pending final resolution of reexamination where the PTO had issued initial rejections of all asserted claims, because a stay would likely simplify the issues and avoid the court's expenditure of additional resources "on claims that may ultimately be invalidated and likely altered from their present form"). The court finds it would be a waste of resources to, at this time, litigate remaining issues of infringement and expert testimony which are based on claims that may ultimately be cancelled or amended. Thus, in granting the stay, the court will

also deny without prejudice to renewal LTC's motion for summary judgment of infringement (ECF 171), MV2's motion for summary judgment of noninfringement (ECF 193), LTC's Motion to Exclude Technical Expert Maher (ECF 187), LTC's Motion to Exclude Damages Expert Kindler (ECF 188), and MV2's Motion to Exclude Opinion of Dr. Cardi (ECF 191).

## CONCLUSION

Accordingly, the court will grant MV2's motion for stay. The case will be stayed until the PTO issues a final office action in the reexamination proceeding, or until six months have passed, whichever is earlier, at which time the stay may be reevaluated depending on the status of the PTO's proceedings and any further action contemplated by LTC. The remaining pending motions in this case will be denied without prejudice to renewal.[8] A separate order follows.

12/21/2020_____/S/_____
Date                                                     Catherine C. Blake
                                                         United States District Judge

---

[8] These motions were filed under seal, and the associated motions to seal will be granted in accordance with the Agreed Protective Order entered in this case. LTC separately filed an unsealed version of its motion for summary judgment (ECF 171) that will be denied without prejudice along with its sealed counterpart (ECF 172).