IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LEADING TECHNOLOGY** | * | |
| **COMPOSITES, INC.,** | * | |
| | * | |
| | * | |
| v. | * | **Civil Action No. CCB-19-1256** |
| | * | |
| | * | |
| **MV2, LLC.** | * | |

## MEMORANDUM

This case involves Leading Technology Composites, Inc.'s ("LTC") allegation that MV2, LLC ("MV2") infringed LTC's intellectual property—U.S. patent number 8,551,598 ("598 patent")—by placing edge trims on MV2's armor panels. Amidst extensive motion practice in this court, the U.S. Patent and Trademark Office ("PTO") conducted a reexamination of LTC's '598 patent at the request of MV2's counsel. As a result of the reexamination proceeding, LTC cancelled Claims 1–6 and amended Claim 7 to incorporate the features of Claims 1–6.

Pending before the court is MV2's motion to dismiss LTC's complaint as moot. ECF 263-1, Def. Mot. MV2 contends the outcome of the reexamination proceeding mooted this case because (1) LTC amended Claim 7 for an improper purpose, and (2) LTC's amendments changed the scope of its original claim, thus entitling MV2 to absolute intervening rights. The motion is fully briefed. *See* ECF 264, Pl. Opp'n; ECF 266, Def. Reply. No hearing is necessary. *See* Local Rule 105.6. For the following reasons, the court will deny MV2's motion to dismiss.

1

I. **BACKGROUND**[1]

In April 2019, LTC sued MV2 based on allegations that MV2 infringed its '598 patent for armored panels with edge trim. ECF 1, Compl. On June 13, 2019, MV2 filed an ex parte request for the PTO to reexamine LTC's '598 patent pursuant to 35 U.S.C. § 302, which provides that "[a]ny person at any time may file a request for reexamination by the Office of any claim of a patent on the basis of any prior art" that would affect the patentability of the patent.

On March 13, 2020, the PTO issued a First Office Action. The First Office Action rejected the claims as being anticipated by and/or unpatentable over prior patents. ECF 113-3, First Office Action.

On July 1, 2020, LTC filed its response to the First Office Action. ECF 169-1, Resp. to First Office Action. In its response, LTC amended Claim 1 and Claims 4–7, while also adding 35 new claims. *Id.* On October 29, 2020, the PTO issued a Second Office Action rejecting LTC's claims. ECF 232-1, Second Office Action. On December 21, 2020, the court stayed the case until the PTO issued its final office action. *See* ECF 235, Mem. Granting Mot. Stay; ECF 236 Order.

The reexamination proceeding concluded on July 26, 2021, when the PTO issued a Reexamination Certificate cancelling LTC's Claims 1–6, and allowing LTC to amend Claim 7 to incorporate the features of Claims 1–6. ECF 261-1, Reexamination Certificate. Once the PTO reexamination concluded, the court recognized "MV2's rationale for a stay no longer exist[ed]." ECF 260, Mem. & Order, at 1. MV2, however, requested the court's permission to brief a motion to dismiss in light of the PTO's reexamination. ECF 258, MV2 Letter, Jul. 7, 2021. The court granted MV2 leave to file the now-pending motion. ECF 260, Mem. & Order, at 4.

---

[1] This case has an extensive procedural history. The court recites the minimum facts necessary to resolve the pending motion.

2

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has jurisdiction over the subject matter of the dispute. Under Article III of the U.S. Constitution, a "case" or "controversy" must exist throughout all stages of federal litigation, not just when a lawsuit is filed. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see also Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008). "[A] case becomes moot when it has 'lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract propositions of law.'" *See Gerdau Ameristeel*, 519 F.3d at 1340 (citing *Hall v. Beals*, 396 U.S. 45, 48).

Because MV2's motion requires a "fulsome review of the complete examination record," LTC contends this fact-intensive motion is "more aptly characterized as a motion for summary judgment of invalidity." Pl. Opp'n, at 34. But the court may resolve factual disputes when evaluating a motion to dismiss for lack of jurisdiction under Rule 12(b)(1). *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Indeed, other courts have considered post-reexamination challenges as arguments related to subject matter jurisdiction. *See, e.g.*, *ThermoLife Int'l, LLC v. Hi-Tech Pharms., Inc.*, Civ. No. 15-892-ELR, 2020 WL 9601807, at *3 (N.D. Ga. Oct. 12, 2020), *R. & R. adopted*, 2020 WL 9601784 (N.D. Ga. Nov. 3, 2020) (recommending dismissal of new and amended claims for lack of jurisdiction); *Cordis Corp. v. Medtronic Vascular, Inc.*, 576 F. Supp. 2d 645, 650 (D. Del. 2008) ("Because claim 44 had been adjudicated to be invalid under 35 U.S.C. § 305 prior to trial, the issue of whether claim 44 was invalid over the prior art was moot and not justiciable.") (internal citation omitted). Accordingly, the court will evaluate MV2's motion as a motion to dismiss under Rule 12(b)(1).

3

## III. DISCUSSION

### A. LTC's Amendments During Reexamination

The pending motion turns on the application of 35 U.S.C. § 305. Section 305, along with its sister statutes codified at 35 U.S.C. §§ 301–307, make up the "reexamination statutes" of the patent code. By granting the PTO the authority to reexamine patents, Congress intended to "(i) settle validity disputes more quickly and less expensively than litigation, (ii) allow courts to refer patent validity questions to an agency with expertise in both the patent law and technology, and (iii) reinforce investor confidence in the certainty of patent rights by affording an opportunity to review patents of doubtful validity." *In re Portola Packaging, Inc.*, 110 F.3d 786, 789 (Fed. Cir. 1997) (citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 601 (Fed. Cir. 1985)).[2] Congress recognized, however, that its broad justifications for creating the reexamination scheme "must be balanced against the potential for abuse, whereby unwarranted reexaminations can harass the patentee and waste the patent life." *Id.* at 790 (citing *In re Recreative Techs. Corp.*, 83 F.3d 1394, 1397 (Fed. Cir. 1996)). So, the reexamination process was "carefully limited" by section 305 and other relevant statutes. *Id.*

MV2 argues that the purpose and effect of LTC's amendments to Claim 7 violated the limits to reexamination set by section 305. The first half of section 305 dictates the permissible purposes in which a patent holder may amend their claims:

> In any reexamination proceeding under this chapter, the patent owner will be permitted to propose any amendment to his patent and a new claim or claims thereto, in order to distinguish the invention as claimed from the prior art cited under the provisions of section 301, or in response to a decision adverse to the patentability of a claim of a patent.

---

[2] The court cites *Portola Packaging* only for its background summary of relevant legislative history. The holding of *Portola Packaging* was superseded by statute. *See In re NTP, Inc.*, 654 F.3d 1268, 1277 (Fed. Cir. 2011).

35 U.S.C. § 305. The second half of the statute prohibits amendments that effectively enlarge the scope of a claim. *See id.* ("No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter.").[3] A violation of section 305 invalidates the amended or added claims. *See Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995).

The court will address each of MV2's arguments in turn.

1. **The Purpose of LTC's Amendments**

MV2 first contends that LTC amended Claim 7 in the reexamination process for purposes other than those authorized by 35 U.S.C. § 305. *See* Def. Mot., at 9. Put plainly, a patent owner may only amend claims (1) "to distinguish the claimed invention from the prior art" or (2) "to respond to an adverse decision as to the patentability of one of the claims." *See Sw. Bell Tel. Co. v. Arthur A. Collins, Inc.*, 279 F. App'x 989, 992 (Fed. Cir. 2008) (citing 35 U.S.C. § 305).

According to MV2, LTC's purpose in amending Claim 7 was to "harmonize" the language of its claims with this court's claim construction order. Because section 305 permits amendments only for the two reasons listed in the statute—neither of which involve "harmonizing" claims with a district court's construction—MV2 asserts LTC's Claim 7 is invalid. And since Claim 7 is the only claim remaining in this litigation,[4] MV2 concludes the court must dismiss the case as moot.

The court disagrees. As an initial matter, LTC appears to have amended its claims "in response to a decision adverse to the patentability of a claim," as expressly permitted by section

---

[3] While section 305 prohibits amendments that broaden the scope of a claim, other statutes trigger certain intervening rights for alleged infringers if amendments are not "substantially identical" to the original claims. Accordingly, amendments that either broaden *or limit* the scope of a claim may impact parallel district court proceedings, as discussed further in Section III.A.2.

[4] Although LTC added several new claims to the '598 patent during the amendment process, LTC declined to seek relief on those new claims. *See* ECF 259, LTC Letter, Jul. 9, 2023, at 2 ("LTC is not currently maintaining that it will assert new claims 8-42.").

305. On March 13, 2020, a PTO Office Action rejected Claims 4–7 as obvious and unpatentable in light of other patents. *See* ECF 264-4, First Office Action, at 6 (citing *Rogers*, U.S. Pat. No. 8,661,572, and *Leighton*, W.O. No. 99/22195).[5] In response to the PTO's First Office Action, LTC amended Claims 5 and 6 to clarify that "the lengths of the inner and outer durable sheets' oppositely lateral extensions" refers to "the lengths of the durable sheets' inner and outer oppositely lateral extensions." *See* ECF 264-5, LTC Corrected Resp. to First Office Action, at 119–20.[6] Yet the PTO's Second Office Action still rejected LTC's claims as unpatentable in light of *Rogers*. *See* ECF 264-6, Second Office Action, at 5–7. So, LTC amended Claim 7 into its current form. *See* ECF 264-7, LTC Resp. to Second Office Action, at 5–6. In support of its amendments, LTC argued that *Rogers* does not govern the newly constituted claims. *See id.* at 44–61.

A patent holder's response to an adverse decision need not expressly state how its newly amended claims distinguish prior art. The Federal Circuit's decision in *Cordis Corp. v. Medtronic Ave, Inc.*, 511 F.3d 1157, 1184 (Fed. Cir. 2008), is instructive. There, a patent holder amended, cancelled, and added claims during reexamination. The patent holder stated the changes were "[r]esponsive to the Office Action mailed June 1, 1998," which rejected all but two of the original claims as obvious or anticipated in light of prior art. *Id.* In that same response to the PTO, the patent holder explained that it amended its claims to "provide specific protection for aspects of the disclosed invention which have been incorporated into competitive products and methods." *Id.* The district court held the patent holder's amendments violated section 305 because the patent holder's reason for amending its claims did not fall under one of the two circumstances permitted

---

[5] References to specific page numbers refer to a document's ECF pagination where applicable.

[6] The PTO issued a "Notice of Defective Paper" when it received LTC's initial response. LTC filed a "Corrected Response" to remedy the defective filing errors. *See* LTC Corrected Resp. to First Office Action, at 1–4.

by the statute. *Id.* at 1185. The Federal Circuit reversed. Noting the changes were "[r]esponsive to the office action that had rejected all but two of the [original] claims," the Federal Circuit held that section 305 "does not require [a] patent owner to include an express statement . . . indicating how the new claims distinguish the prior art references." *Id.*

Here, the Office Actions rejecting LTC's claims were decisions adverse to the patentability of the '598 patent. LTC, like the patent holder in *Cordis*, responded to each of those rejections by amending its claims in a manner expressly contemplated by section 305. To be sure, LTC stated that its amendments harmonized LTC's claims with the district court's claim construction. *See* LTC Resp. to First Office Action, at 13. But that statement was made in the context of LTC's broader response to an adverse Office Action which questioned the patentability of LTC's claims. Indeed, LTC's first sentence in the relevant filing explains that its amendments were made "*in response to* the Office's October 29, 2020 communication ('Second Office Action')." *See* LTC Resp. to Second Office Action, at 1 (emphasis added). Amendments accompanied by statements of this kind generally withstand scrutiny under section 305. *See Cordis*, 511 F.3d at 1185 (reversing a finding of invalidity under section 305 because the patent holder stated its amendments were "[r]esponsive to" an office action that had rejected all but two original claims in light of prior art references); *see also Prometheus Lab'ys Inc. v. Roxane Lab'ys, Inc.*, Civ. No. 11-1241-FSH, 2013 WL 6627640, at *5 (D.N.J. Dec. 16, 2013), *aff'd*, 805 F.3d 1092 (Fed. Cir. 2015) (finding claim modifications did not violate section 305 because they were made in response to a PTO rejection which cited prior art).

MV2's motion isolates a single sentence in LTC's hundred page response to the PTO and declares that statement to be LTC's *sole* reason for amending its claims. *See* Def. Reply, at 9 n.2 (describing LTC's distinction between amended claim language and prior art as "ancillary"). In

7

doing so, MV2 ignores how LTC justified its amendments in various other parts of its responses to the PTO. *See* LTC Resp. to First Office Action, at 82 (describing how Claim 4, among others, recite a feature not present in the combination of prior art references); LTC Resp. to Second Office Action, at 19 (explaining justification for its amendment to Claim 7 in response to PTO rejection); *see also* 264-8, Aff. of Kenneth Jack, at ¶¶ 7–8 (explaining that LTC's intent in amending its claims was not solely to "harmonize" its claims with the district court's claim construction).[7] Binding precedent, however, cautions against such a search for an express statement of purpose. *See Cordis*, 511 F.3d at 1185 ("Section 305 does not require the patent owner to include an express statement that the new claims distinguish the prior art or remarks indicating how the new claims distinguish the prior art references.").

A party may have any number of reasons for amending its claims during reexamination. The court need not distill those motivations down to a single statement of purpose. MV2's passing reference to the statutory interpretation rule of *expressio unius est exclusio alterius* (which, put plainly, means "the expression of one thing implies the exclusion of the other") is unavailing in this regard. *See* Def. Reply, at 13–14. Section 305's specification of the two permissible purposes for amendments implies that any other purpose, standing alone, is not a sufficient justification for an amendment. But that does not *prohibit* a party, like LTC, from simply possessing an *additional* reason for amending its claims as a supplement to the justifications expressly permitted by section 305.

---

[7] MV2 contends that LTC's rejection of the PTO's offer to resolve its disputed claims proves that LTC did not amend its claims to "respond" to the PTO's adverse Office Actions. *See* Def. Reply, at 10–11. LTC's refusal to accept this offer, however, could have just as easily been explained by its desire to avoid triggering MV2's intervening rights because such an amendment would have enlarged the scope of LTC's original claims.

Little authority supports MV2's request for dismissal. MV2 relies on a string of cases involving patent holders who amended their claims in *opposition* to a district court's claim construction. Take *In re Freeman*, 30 F.3d 1459 (Fed. Cir. 1994), for example. There, the Federal Circuit affirmed a district court's decision that invalidated a patent held by Dr. Freeman after rejecting Dr. Freeman's claim interpretation. *Id.* at 1462. During subsequent reexamination proceedings, Dr. Freeman sought to amend claims in the reissued patent "to avoid [the district court's] interpretation of [his] claims." *Id.* at 1466. Dr. Freeman "never argued that the amendments . . . were made to distinguish those claims from any prior art." *Id.* at 1468. Rather, Dr. Freeman "candidly stated" the claims were amended "with the benefit and knowledge as to how a reader could misconstrue [his] intent." *Id.* (alteration in original).

MV2 reads *Freeman* to encompass situations where, as here, a patent holder amends their claims to synchronize with a district court's claim construction. But such an application would invert *Freeman*'s holding. Indeed, *Freeman*'s progeny stand for the same uncontroversial principle that a patent holder "cannot use reexamination for the purpose of amending its claims to address an *adverse* claim construction." *See Sw. Bell*, 279 F. App'x at 992 (citing *Freeman*, 30 F.3d at 1468) (emphasis added); *In re Digital*, Civ. No. 12-2698-DMS, 2013 WL 12095241, at *3 (S.D. Cal. Aug. 21, 2013) (describing *Freeman* as establishing that "reexamination cannot serve as an 'end run' around district court claim construction").[8]

---

[8] MV2 references only one case, *Total Containment, Inc. v. Environ Products, Inc.*, 921 F. Supp. 1355, 1383 (E.D. Pa. 1995), *aff'd in part, vacated in part*, 106 F.3d 427 (Fed. Cir. 1997), not involving amendments submitted to circumvent a district court's claim construction. But *Total Containment* provides little guidance. The claim invalidated in *Total Containment* was found impermissible because the applicant's attorney "candidly admitted" the claim was added to cover a competitor's apparatus rather than distinguish from prior art. *Id.* at 1383. No such allegation exists here.

In sum, the current record does not suggest LTC amended its claims for an improper purpose in violation of section 305.

### 2. The Effect of LTC's Amendments

MV2's next asserts that the effect of LTC's amendments changed the scope of Claim 7, thus triggering MV2's absolute intervening rights. *See* Def. Mot., at 15–24.

Under the intervening rights doctrine, "[a] patentee of a patent that survives reexamination is only entitled to infringement damages for the time period between the date of issuance of the original claims and the date of the reexamined claims if the original and the reexamined claims are 'substantially identical.'" *R & L Carriers, Inc. v. Qualcomm, Inc.*, 801 F.3d 1346, 1351 (Fed. Cir. 2015) (quoting 35 U.S.C. § 252). "[I]t is the scope of the claim that must be identical, not that the identical words must be used." *Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987) (citation omitted). "'Identical' does not mean verbatim, but means at most without substantive change." *See Bloom Eng'g Co. v. N. Am. Mfg. Co., Inc.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997) (citation omitted). To decide whether a claim has been substantively changed, the court must determine "whether any conceivable process would infringe the amended claim, but not infringe the original claim," or vice versa (i.e., whether any process would "infringe the original claim, but not infringe the amended claim"). *See R & L Carriers*, 801 F.3d at 1350–51 (citation omitted).

MV2 argues that LTC's amendments changed the scope of the language describing the "durable sheets" that comprise the ballistic edge protection in the '598 patent. The original language in Claims 5 and 6 provided as follows:

> 5. The armoring panel of claim 4 wherein each oppositely lateral extension has a length, the lengths of the inner and outer *durable sheets'* oppositely lateral extensions being less than the lengths of the intermediate stratums' oppositely lateral extensions.

10

> 6. The armoring panel of claim 5 wherein the lengths of the inner and outer *durable sheets'* oppositely lateral extensions are at least one inch.

*See* ECF 264-1, Claim Comparison Chart, at 2. Claim 7, which incorporated and amended the relevant language from Claims 5 and 6, provides:

> [7.5] wherein each oppositely lateral extension has a length, the lengths of the durable sheets' *outer and inner* oppositely lateral extensions being less than the lengths of the intermediate stratums' oppositely lateral extensions;
>
> [7.6] wherein the lengths of the *durable sheets'* outer and inner oppositely lateral extensions are at least one inch[.]

*Id.*

According to MV2, the phrase "inner and outer" in the original claims modified the "durable sheets," which identified the oppositely lateral extensions of *only* the inner and outer durable sheets as being the subject of the limiting language regarding the respective lengths of the "oppositely lateral extensions" in each claim. When LTC amended these phrases from "inner and outer durable sheets' oppositely lateral extensions" to "durable sheets' outer and inner oppositely lateral extensions," MV2 asserts *all* the durable sheets' outer and inner opposite lateral extensions must now have a length less than the lengths of the intermediate stratums' oppositely lateral extensions. *See* Def. Mot., at 20–23.

MV2's argument, however, ignores the court's prior claim construction. The court already construed LTC's original claim as meaning "the durable sheets' outer and inner oppositely lateral extensions." ECF 105, Claim Construction Mem., at 10–11 (explaining that "[u]pon a close reading, it would be clear that there are no such things as 'inner and outer durable sheets' with respect to the invention"). Because LTC's amendments to Claim 7 simply copy the language used by the court in interpreting LTC's original claims, the scope of the amended claim is "substantially identical" to the original claim. *See R & L Carriers*, 801 F.3d at 1351. Accordingly, MV2 is not entitled to intervening rights.

11

**B. LTC's Protective Order Enforcement Letter**

While the motion to dismiss remained pending, LTC sought to compel MV2 to review its designation of documents pursuant to the Protective Order, ECF 30, entered in the case. *See* ECF 269, LTC Letter, Feb. 4, 2022.[9] In response, MV2 made clear it did "not object to engaging in the process of re-assessing the confidentiality designation of the documents LTC has identified." ECF 271, MV2 Letter, Feb. 4, 2022, at 2. Rather, "MV2 wishe[d] only to postpone that process until the pending motion is decided and the parties know whether this case will continue." *Id.* With the motion to dismiss decided, the court shall direct the parties to meet and confer about the issue. While no relief will be ordered at this time, LTC may renew its request at a later date, if necessary.

## IV. CONCLUSION

For the reasons stated here, LTC's motion to dismiss for lack of jurisdiction, ECF 263, will be denied. LTC's motion to seal, ECF 272, will be granted. A separate order follows.

  April 4, 2023                                                    /s/
Date                                                    Catherine C. Blake
                                                        United States District Judge

---

[9] In accordance with the Protective Order, the court will grant ECF 272, LTC's Motion to Seal Exhibits B, D, E, and F of its Protective Order Enforcement Letter, because the relevant exhibits contain highly sensitive information related to patents and other proprietary and confidential business information.