**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **LEADING TECHNOLOGY COMPOSITES, INC.** | * |
| | * |
| *Plaintiff,* | |
| v. | *   **Civil Case No. 1:19-cv-01256-ABA** |
| **MV2, LLC** | * |
| *Defendant.* | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>INTERIM MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Leading Technology Composites, Inc. ("LTC") unsuccessfully sued Defendant, MV2, LLC ("MV2") for patent infringement involving competing anti-ballistic armor panels used in military, law enforcement, and commercial vehicles, with this Court's decision to that effect coming on May 30, 2024 when summary judgment in favor of MV2 for non-infringement was granted.  (ECF No. 320).  The Federal Circuit affirmed on February 11, 2026.  (ECF No. 345). On June 1, 2026, the parties notified the Court of a dispute regarding the return of what remained of an exemplar panel that MV2 had provided to LTC for testing and analysis pursuant to a discovery request in August of 2019.  (ECF No. 353). At the time it provided the exemplar, MV2 indicated, "These samples are not confidential and LTC may do whatever it would like with them." (ECF No. 358-1).  Ultimately, LTC provided the exemplar panel to its designated expert, Dr. Adam Cardi, who, *inter alia*, subjected the panel to destructive analysis by cutting various cross sections from the panel so as to analyze its material components and structure.  Dr. Cardi provided a report of his opinions detailing this analysis, and was also deposed by MV2.  Dr. Cardi's analysis,

together with various images of the panel post-testing, have been referenced in various filings by LTC. *See, e.g.*, (ECF No. 171 at 6). [1]

## I.    BACKGROUND

Almost immediately after summary judgment regarding non-infringement was granted in its favor, MV2 asked for the remains of the panel to be returned, and it reiterated that request shortly after the Federal Circuit affirmed that decision in February of 2026. (ECF No. 359-1 at 11-14). LTC voiced no substantive opposition to that request until March 31, 2026 when, for the first time, it asserted both an ownership interest and work product protection regarding the panel. (ECF No. 359-1 at 8).

The parties now ask the Court to rule on whether the panel must be returned. U.S. District Judge Abelson referred this dispute to the undersigned on June 5, 2026. (ECF No. 354). The parties submitted their position statements on June 16, 2026 pursuant to the undersigned's informal discovery dispute procedure. (ECF Nos. 358 and 359). An in-person hearing was held on July 7, 2026.

## II.    ANALYSIS

At the hearing, MV2 explained that it seeks return of the panel to assist in its pending motion for attorneys fees and costs pursuant to 35 U.S.C. § 285, filed on June 13, 2024, shortly after summary judgment was granted in its favor. (ECF No. 325). In essence, MV2 seeks return of the panel to determine whether LTC performed *additional* destructive testing on the panel after Dr. Cardi's destructive analysis, specifically ballistic testing. As the Court understands MV2's reasoning, if LTC undertook such testing and the results suggested that MV2's panel did not

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

infringe based on its testing performance, LTC's continued pursuit of this case would be "exceptionally meritless" or otherwise meet the standard allowing the recovery of attorneys fees and costs.[2]

LTC's work product argument posits that if the panel is returned, MV2 will be able to reverse engineer what LTC's attorneys ordered tested (or not tested) and how, which, in turn, would reveal their attorneys' and consulting experts' interpretation of facts, legal theories and testing of their theories of infringement.[3] (ECF No. 358 at 2-3). LTC would not confirm at the hearing whether such additional testing did or did not take place (and, if so, precisely when) but did indicate that any decision-making on additional testing would not have occurred until after Dr. Cardi's report was produced and deposition took place and would not have been performed by or provided to Dr. Cardi if it did occur.

At the conclusion of the hearing, the Court asked for additional briefing on the work product issue. The Court has emphasized that LTC bears the burden of establishing work product protection over the disputed panel, and that the Court needs a better understanding of the context of this issue within the larger case. To assist the parties in being more targeted and concise in their filings, what follows is the Court's general understanding of that context based on its review of the docket.

---

[2] Although that issue is ultimately for Judge Abelson, the undersigned observes that at least since its first Motion for Summary Judgment, LTC has consistently argued that the disputed "for resisting" language makes ballistic performance testing irrelevant, such that even if such testing was performed, it would not seem to, by itself, carry the day for MV2 on that issue as the mere testing of an opponent's theory does not necessarily undermine an argument otherwise asserted on a good faith basis.

[3] LTC urges two additional arguments. The first, previewed above, is that by providing the panel in discovery with no restrictions, MV2 conveyed ownership of the panel to LTC. Additionally, LTC argues that notwithstanding LTC's utilization of the discovery process to procure possession of the panel in the first place, the Court lacks power under its inherent power to control the discovery process to order the return of the panel, and should instead analyze this dispute under state law conversion rules. The Court is reviewing the additional authorities cited by LTC at the hearing and will withhold ruling on either issue at this time.

Central to the infringement dispute is whether language originally in the preamble to the patent acts as a functional limitation on the scope of the patent.  Specifically, the preamble includes that the invention is "for resisting edge impact penetrations by ballistic projectiles."[4]  LTC contended that this is not a claim limitation or functional limitation but is merely a statement of purpose for an "apparatus" patent. (*See Generally*, ECF No. 281, *LTC Renewed Motion for Summary Judgment*).  If correct, LTC would only need to show the composition and structure of MV2's panel to prove infringement, not any operational quality such as anti-ballistic performance.  Thus, in LTC's formation of the issue, ballistic testing would be unnecessary and irrelevant.  MV2, by contrast, argued that the language was a functional limitation.  (*See Generally*, ECF No. 293, *MV2 Opposition and Cross-Motion for Summary Judgment*).  If correct, MV2 urged that LTC would need to prove that, MV2's panel's ballistic performance was enhanced at the edges of the panel as set forth in LTC's patent—something that MV2 argued would require ballistic testing.

The parties maintained their respective positions through cross motions for summary judgment on the issue of infringement.  LTC further argued however that even if the disputed language was a functional limitation, LTC had adequate proof to create a genuine dispute of material fact so as to preclude summary judgment of noninfringement.  LTC pointed to an email and deposition of an MV2 principal that suggested that the MV2 panel had some degree of edge impact protection.  There was also the report and deposition of LTC's expert Dr. Cardi, who opined that based on an analysis of its materials and structure, MV2's panel would be expected to have some edge protection given its similarity in composition and structure to LTC's panel.  He buttressed this by arguing that earlier versions of LTC's panels that had the same "characteristics"

---

[4] As the Court understands it, traditionally, the ability of a panel to withstand a projectile diminished as one moved from the center of the panel to its edge; LTC's panels allegedly represent, *inter alia*, an improvement on the anti-ballistic performance at the edges of a panel.

as the MV2 panel had provided such protection in ballistic testing performed well before the litigation. Other than the cross sections cut into the exemplar panel provided to LTC in discovery by MV2 however, Dr. Cardi did no ballistic testing of the MV2 panel.

This Court granted MV2's motion, finding that MV2's panel did not infringe. (ECF No. 320). This Court held that the disputed language regarding edge ballistic performance was a functional limitation.[5] The Court also found that the evidence cited by LTC regarding MV2's statements about performance, and Dr. Cardi's report on how MV2's panel would hypothetically perform under ballistic testing were insufficient to create a genuine dispute of material fact. (ECF No. 319 at 29). The Court expressed no opinion regarding whether LTC would have needed ballistic testing of the MV2 panel to prove infringement. *Id*.

LTC reiterated its argument to the Federal Circuit on appeal, which affirmed. (ECF No. 345). On repeated questioning at oral argument before the appellate court as to why it did not perform ballistic testing on the exemplar panel, LTC asserted that it didn't think it needed to do such testing given its argument that the "for resisting" language did not act as a functional limitation, and that it didn't want to further destroy the exemplar panel provided by MV2 in discovery by performing ballistic testing because it thought it needed to preserve the panel "for other purposes." (Oral Argument recording at approx. 8:45 to 11:30). LTC was quite clear that no ballistic testing of the MV2 exemplar panel was performed by Dr. Cardi. *Id.*

The parties are welcome in their briefing to point out errors in or disagreements with the Court's above synopsis framing the work product issue. LTC will need to establish specifically why the work product doctrine would apply to the current condition of the panel, including but not

---

[5] The Court differed slightly from MV2s' argument regarding the contours of the functional limitation, finding that "for resisting" meant that the anti-ballistic qualities at the edge of the panel would equal the anti-ballistic qualities as the center of the panel. (ECF No. 319 at 22).

limited to how its condition would allow reverse engineering of the allegedly protected information.  As it believes appropriate, LTC may submit information including the panel at issue for *in camera* review.  The Court asks that MV2 be specific as well as to why no protection exists and/or was somehow waived. LTC's brief is due on August 11, 2026.  MV2's response is due twenty-one days after LTC's brief is filed.  LTC's reply is due fifteen days after MV2's response.

Dated: July 9, 2026 _____/s/_____

J. Mark Coulson
United States Magistrate Judge

6